J-S16016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: G.M.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.J.D., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 147 MDA 2025 |

Appeal from the Decree Entered January 13, 2025
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-9576

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 14, 2025**

A.J.D., Jr. ("Father"), appeals from the decree, which granted the petition filed by J.E.K. ("Mother") and J.T.K. ("Stepfather) and involuntarily terminated Father's parental rights to his son, G.M.D., born in December 2010.  We affirm.

We glean the following history from the certified record.  Father and Mother are the parents of G.M.D. but were never married.  Although they resided together at the time G.M.D. was born, they separated when G.M.D. was approximately three and one-half months old after Father kicked them out of the house.[1]  At that point, Mother moved to her aunt's residence with

_____

[1] Father testified that Mother voluntarily left when G.M.D. was three and one-half years old, but the court discredited his recollection of the salient events. The court also discredited Father's allegations that Mother obstructed his relationship with G.M.D. by purportedly failing to keep him updated and not following up on his offers of assistance.

G.M.D.  A support order was initially in place, but Mother terminated it in 2013 because Father "was constantly threatening" to "bury" her for "taking his money."  N.T. Termination Hearing, 10/21/24, at 17.  Father did not provide financial support thereafter.

During the ensuing years, Father interacted with G.M.D. approximately three to six times a year, mostly for holidays and birthdays at the homes of the paternal grandparents.  Despite having a court-ordered custody arrangement for his two older children from another relationship, Father did not seek custody of G.M.D.  Critically, in the nine months immediately preceding the filing of the termination petition in January 2024, Father had no planned contact with G.M.D.  His last two visits before that timeframe were for short durations, with the penultimate communication occurring on Christmas day in 2022, and the final contact in April of 2023, to celebrate the Easter holiday.  Father did not ask to see G.M.D. after that visit.  Nonetheless, Mother and G.M.D. accidentally encountered Father at a festival in August or September of 2023.  Father approached them and spoke with G.M.D. briefly. *Id*. at 19.

Meanwhile, Mother and Stepfather had married in November 2019, when G.M.D. was nine years old.  Stepfather assumed the primary paternal role in G.M.D.'s life and, seeking to adopt him, Mother and Stepfather filed the underlying petition to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).  Although Father initially agreed to Stepfather's adoption, he subsequently revoked his consent.

The orphans' court conducted a contested termination hearing, at which point G.M.D. was thirteen years old.[2] Mother and Stepfather testified in support of termination, whereas Father and paternal grandfather offered evidence in opposition. The court conducted an *in camera* interview with G.M.D. Finally, G.M.D.'s attorney advised that termination would best serve his interests. After taking the matter under advisement, the court found that Mother and Stepfather had met their burden of proof as to § 2511(a)(1) and (b), and therefore entered a decree terminating Father's parental rights involuntarily.

Father filed a timely notice of appeal and accompanying concise statement of errors. The court authored a responsive Pa.R.A.P. 1925(a) opinion. Father presents two issues for our review:

1. Whether the trial court abused its discretion and/or committed an error of law in determining the parental rights of [Father] to the subject minor child, G.M.D., should be terminated pursuant to 23 Pa.C.S. § 2511(a)(1).

2. Whether the trial court abused its discretion and/or committed an error of law in determining the tenets of 23 Pa.C.S. § 2511(b) have been satisfied and the best interests of the subject minor child, G.M.D., served by terminating the parental rights of [Father].

Father's brief at 5 (citations and some capitalization altered, numbering supplied).

---

[2] Upon confirmation that no conflict existed, the court appointed Marsha Ann Basco, Esquire, to serve as both guardian *ad litem* and legal counsel for G.M.D.

- 3 -

We begin with the legal principles governing our review of decrees terminating parental rights:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Further, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Section 2511 of the Adoption Act sets forth the following two-part analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re Adoption of B.G.S.*, 245 A.3d 700, 705 (Pa.Super. 2021) (cleaned up).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up).

To affirm a termination decree, we need only agree with the trial court that any one subsection of § 2511(a), as well as § 2511(b), is met. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). As it pertains to the case *sub judice*, we consider § 2511(a)(1) and (b), which provide as follows in relevant part:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court has offered authoritative guidance on the inquiry central to termination pursuant to § 2511(a)(1):

Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance[,] and support.  Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship.  The roster of such positive actions undoubtedly includes communication and association.  The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.  Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (cleaned up).

Although our General Assembly emphasized "the six months immediately preceding the filing of the termination petition" as the "most critical period for evaluation[,]" the High Court cautioned that courts should "avoid a mechanical application of the law regarding the termination of parental rights." *Id*. at 592-93.  Rather, the review conducted by the orphans'

- 6 -

court should encompass the "whole history of a given case." *In re Adoption of C.M.*, 255 A.3d at 364. Moreover, every assessment of § 2511(a)(1) "must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of parental rights." *In re Adoption of L.A.K.*, 265 A.3d at 593. These factors include, among other things: (1) the parent's explanation for his conduct; (2) post-abandonment contact and efforts to re-engage with the child; and (3) the effect on the child of terminating the parent's rights pursuant to § 2511(b). *Id*.

Father argues that his testimony and that of paternal grandfather "demonstrated [that Father] exerted himself with an affirmative performance as a parent in light of his life circumstances [and] attempted to take and maintain a place of importance in [G.M.D.]'s life which was thwarted by Mother." Father's brief at 13-14.

The trial court disagreed with Father's assertions, summarizing its conclusions thusly:

> Th[e] court finds the testimony of Mother, Stepfather and the child to be credible and does not find Father's testimony to be credible. Even assuming *arguendo* that Father took care of the child when the child was an infant while Mother was out with friends, a parent's responsibility to a child during their minor age is a continuous process and does not stop when the parent unilaterally wishes to do so. . . . Children need to be nurtured and protected and the bond that a parent may have with a child needs to be preserved. Father had every opportunity to file a custody complaint in court in order to arrange scheduled visits

with [G.M.D]. Instead, most recently, nine months of no contact occurred between Father and [G.M.D.] before Mother finally filed a petition to terminate his parental rights.

Based on the above testimony by Mother, Stepfather and Father, th[e orphans'] court finds that pursuant to 23 Pa.C.S. § 2511 (a)(1), Father had refused or failed to perform his parental duties in excess of six months prior to the filing of the petition for termination of Father's parental rights.

Orphans' Court Opinion, 3/3/25, at 11 (some capitalization altered; parenthetical numbers omitted).

Further, the court determined that Mother had not hindered Father's contact with G.M.D. Nonetheless, it noted that "[e]ven if she had, Father, being familiar with the court system, could have easily filed a custody complaint which would have permitted him access to [G.M.D]. Instead, Father waited nine months until this petition was filed before th[e orphans'] court to do so." *Id*. at 13 (some capitalization altered; parenthetical numbers omitted). Overall, the court deduced that Father demonstrated only a passive interest in G.M.D. and failed to affirmatively act to engage with him. Thus, it ruled that "Father did not exercise reasonable firmness in seeing his child throughout the history of this case." *Id*.

The court additionally noted that the uncontradicted evidence at the hearing showed that over six months had elapsed since Father had seen G.M.D. at the time of the filing of the petition. *Id*. at 13-14. Finally, the court credited the testimony that Stepfather had assumed a paternal role in G.M.D.'s life, and that he and Mother tended to the child's physical, emotional, and developmental needs. *Id*. at 14-15.

Our review of the record fully supports the conclusions of the orphans' court. First, Father did not ask to see G.M.D. in the nine months preceding the filing of the petition. Prior to that, Father was content to spend, at most, six days of the year with his son. He did not contribute financially to support G.M.D., nor did he pursue custody proceedings to guarantee time with his child. It is plain from our review of the record that Father has been irresolute throughout the history of this case in performing parental duties. Indeed, it is evident that Father's lack of contact with G.M.D. was due to his own half-hearted attempts at maintaining their father-son relationship. *See In re Adoption of L.A.K.*, 265 A.3d at 592 (describing the firmness a parent must exhibit in attempting to maintain the parent-child relationship). Based on the foregoing, we hold that the orphans' court did not abuse its discretion in finding statutory support for termination pursuant to § 2511(a)(1).

Having found statutory support for termination under subsection (a), we now pivot to § 2511(b), which is reviewed from the child's perspective. *See Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 51 (Pa.Super. 2024). In conducting a § 2511(b) analysis, the court must place the child's "developmental, physical, and emotional needs and welfare above concerns for the parent. Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis." *Id*. (cleaned up). Those emotional needs "include intangibles such as love, comfort, security, and stability." *Id*. at 52 (cleaned up). "[I]f the child has any bond with the biological parent, the court must

conduct an analysis of that bond, which is not always an easy task." *Id*. (cleaned up).

Where, as here, one parent seeks to terminate the rights of the other parent so that a step-parent may adopt the child, "the court must address and evaluate the 'proposed adoption' that was averred in the termination petition" and "the petitioning parent must demonstrate the planned adoption is also in the child's best interests[.]" *In re E.M.I.*, 57 A.3d 1278, 1287 (Pa.Super. 2012) (cleaned up). Finally, this Court "must keep the ticking clock of childhood ever in mind" and we "will not disturb [the court's bonding] assessment when [its] factual findings are supported by the record." *Matter of Adoption of L.C.J.W.*, 311 A.3d at 52 (cleaned up).

Presently, Father argues, without explanation, that "it was inappropriate" for the orphans' court to conduct a § 2511(b) analysis "when [his] very ability to bond with his son has been inhibited by [Mother and Stepfather's] own inaction." Father's brief at 15. He insists "that a bond remains" between him and G.M.D. *Id*. Ultimately, he contends that the strength of that bond, despite the alleged obstacles imposed by Mother and Stepfather, proves that preserving his parental rights is in G.M.D.'s best interests. *Id*.

As noted hereinabove, the orphans' court found no hindrance by Mother or Stepfather, and that conclusion is well supported by the record. Rather, in conducting its § 2511(b) analysis, the court explained its findings as follows:

The Court finds that Father is not and has not been able to meet the child's needs. In stark contrast, Mother and Stepfather have amply demonstrated that they continue to meet the child's physical, developmental and emotional needs and that the minor child has thrived under their care. [G.M.D.] needs and deserves a paternal figure in life that will supply proper nurturing, love, guidance and security.

Orphans' Court Opinion, 3/3/25, at 18. Further, G.M.D. has indicated his consent to being adopted by Stepfather.

The court's conclusions are supported by the certified record. Our review of the evidence revealed that the strong father-son bond exists between G.M.D. and Stepfather, whom G.M.D. calls "dad," and not between G.M.D. and Father. It is apparent that G.M.D. is bonded to Stepfather and that terminating Father's parental rights so that G.M.D. could be adopted by Stepfather would best serve the developmental, physical, and emotional needs of G.M.D.

Accordingly, we affirm the decree terminating involuntarily Father's parental rights as to G.M.D.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/14/2025